UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK CAMERON, Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>PINPOINT PIPELINE INSPECTION & TESTING, LLC and BUCKEYE PARTNERS, L.P. | Case No.: _____<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

### SUMMARY

1. Pinpoint Pipeline Inspection & Testing, LLC (Pinpoint) and Buckeye Partners, LP (Buckeye) (collectively Defendants) do not pay their Day Rate Workers overtime as required by the Fair Labor Standards Act (FLSA), the Pennsylvania Minimum Wage Act (PMWA), the Ohio Minimum Fair Wage Standards Act (OMFWSA), and the Ohio Prompt Pay Act (OPPA) (the OMFWSA and the OPPA referred to collectively as the "Ohio Acts").

2. Instead, Defendants pay their Day Rate Workers a flat daily rate for all hours worked in a workweek, including those in excess of 40 in a workweek.

3. Defendants' day rate pay plan violates the FLSA, the PMWA and the Ohio Acts because the Day Rate Workers are owed overtime for hours worked in excess of 40 in a week at the rate of one-and-one-half times their regular rates.

4. Mark Cameron (Cameron) brings this action to recover the unpaid overtime and other damages owed to Defendants' Day Rate Workers.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). Buckeye is a resident of this District and Division. Buckeye and Pinpoint are residents of the State of Texas.

## PARTIES

7. Cameron worked for Defendants as a Safety Inspector from approximately October 2017 to August 2018 in Pennsylvania, Ohio, and Michigan.

8. Throughout his employment, Defendants paid Cameron a flat daily rate for all the hours he worked including those in excess of 40 in a workweek (day rate pay plan).

9. Cameron's consent to be a party plaintiff is attached.

10. Cameron brings a FLSA collective action on behalf of himself and all other Defendants' Day Rate Workers who were paid according to Defendants' day rate pay plan.

11. The FLSA class of employees Cameron seeks to represent consists of:

**All Day Rate Workers employed by Defendants in the U.S. and paid according to Defendants' day rate pay plan at any time during the last 3 years** (the Day Rate Workers).

12. Cameron brings Rule 23 class actions on behalf of himself and all other Defendants' Day Rate Workers who were paid according to Defendants' day rate pay plan in Pennsylvania and Ohio, respectively.

13. The PMWA subclass of employees Cameron seeks to represent consists of:

**All Day Rate Workers employed by Defendants in Pennsylvania and paid according to Defendants' day rate pay plan at any time during the last 3 years** (the Pennsylvania Workers).

14. The Ohio Acts subclass of employees Cameron seeks to represent consists of:

**All Day Rate Workers employed by Defendants in Ohio and paid according to Defendants' day rate pay plan at any time during the last 3 years** (the Ohio Workers).

15. Pinpoint is a Texas limited liability company with its headquarters in Rotan, Texas.

16. Pinpoint provides pipeline inspection and testing services, line locating services, NDE services, welder certifications, anomaly assessments, GPS marking & locating services, and cathodic protection related services.[1]

17. Pinpoint may be served by serving its registered agent for service of process: Jeremy K. Hyer, 1128 County Road 349, Rotan, Texas 79546, or at any other place where Jeremy K. Hyer may be found.

18. Buckeye is a publicly traded master partnership organized under the laws of the State of Delaware and with its principal executive offices in Houston, Texas.

19. Buckeye "owns and operates a diversified global network of integrated assets providing midstream logistic solutions, primarily consisting of the transportation, storage, processing and marketing of liquid petroleum products."[2]

20. Buckeye may be served by serving its registered agent for service of process: Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 East 7th St., Suite 200, Austin, Texas 78701.

## FLSA COVERAGE

21. For at least the past 3 years, Defendants have been employers and/or joint employers within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22. For at least the past 3 years, Defendants have been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

---

[1] https://pinpointinspectandtest.com/career-opportunities
[2] https://www.buckeye.com/AboutUs/tabid/54/Default.aspx

23. For at least the past 3 years, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. Defendants have, and have had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

25. Further, Defendants' annual gross volume of sales have well exceeded $1,000,000 for at least the past 3 years.

26. For at least the past 3 years, Cameron and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

27. Defendants treated all their Day Rate Workers (including Cameron) as employees by setting their work schedules, controlling their job assignments, withholding taxes from their pay, and maintaining their personnel records.

## FACTS

28. Pinpoint provides a variety of Day Rate Workers and inspection services to its clientele including environmental inspectors, welding inspectors, pipeline integrity inspectors, utility/craft inspectors, NACE inspectors, NDE inspectors, right-of-way inspectors, vendor inspectors, I&E inspectors, and CP inspectors.[3]

29. Buckeye "operates approximately 6,000 miles of pipeline located primarily in the northeastern and upper Midwestern portions of the United States, and services over 100 delivery

---

[3] https://pinpointinspectandtest.com/inspector-classifications

- 4 -

locations" transporting "liquid petroleum products, including gasoline, jet fuel and a variety of distillates, from major supply sources to terminals and airports located within end-use markets."[4]

30. Cameron and the Day Rate Workers are the employees who perform the various pipeline and safety inspection services to Pinpoint's clientele, including Buckeye.

31. Defendants' Day Rate Workers, including Cameron, typically work more than 40 hours a week.

32. Defendants' Day Rate Workers often worked 60 or more hours per workweek.

33. Defendants paid all their Day Rate Workers pursuant to their day rate pay plan with no additional compensation for overtime regardless of the number of hours worked that workweek.

34. In October 2017 Cameron began working for Defendants as a Safety Inspector in Western Pennsylvania, Northern Ohio, and the Detroit, Michigan areas.

35. As a Safety Inspector Cameron was responsible for enforcing safety policies, plans, and specifications based on state and federal standards and common best practices for the industry, communicating with Pinpoint and Buckeye personnel to ensure compliance with safety requirements and holding safety meetings for field personnel.

36. Defendants' records reflect the hours Cameron works each workweek and pay period.

37. Defendants paid Cameron a flat daily rate for each day he worked.

38. Defendants also gave Cameron a daily per diem that they did not count as wages paid.

39. Defendants never guaranteed Cameron a minimum salary per week.

40. Although he often worked more 60 or more hours per workweek, Defendants never paid Cameron any overtime but, rather, paid him only a daily rate for each day worked.

---

[4] https://www.buckeye.com/BusinessOperations/PipelineTransportationOperations/tabid/584/Default.aspx

41. All Defendants' Day Rate Workers perform duties like those Cameron performs: enforcing safety policies, plans, and specifications based on state and federal standards and common best practices for the industry, communicating with Pinpoint and Buckeye personnel to ensure compliance with safety requirements, and holding safety meetings for field personnel.

42. The Day Rate Workers work similar hours and are denied overtime as a result of the same illegal day rate pay practice.

43. All Defendants' Day Rate Workers regularly worked in excess of 40 hours in a workweek.

44. Instead of paying Day Rate Workers overtime, Defendants pays them only their flat daily rate for each day worked with no additional pay for working hours in excess of 40 in a workweek.

45. As a result, Defendants failed to pay the Day Rate Workers proper overtime compensation for hours worked in excess of 40 in a workweek.

## FLSA VIOLATIONS

46. Cameron incorporates all preceding paragraphs.

47. Defendants' day rate pay plan violates the FLSA because Cameron and the other Day Rate Workers did not receive overtime pay for working more than 40 hours in a week.

48. Defendants knew, or showed reckless disregard for whether, their day rate pay plan violated the FLSA.

49. Defendants' failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

50. Nor was Defendants' decision not to pay overtime made in good faith.

51. Accordingly, Cameron and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

## PMWA Violations

52. Cameron incorporates all preceding paragraphs.

53. Cameron brings this claim under the PMWA as a Rule 23 class action.

54. The conduct alleged herein violates the PMWA (43 Pa. Stat. Ann. § 333.104).

55. The Day Rate Workers who worked overtime for Defendants in Pennsylvania are the Pennsylvania Workers.

56. At all relevant times, Defendants were subject to the requirements of the PMWA.

57. At all relevant times, Defendants employed Cameron and each Pennsylvania Worker as an "employee" within the meaning of the PMWA.

58. The PMWA requires employers like Defendants to pay employees at 1.5 times the regular rate of pay for hours worked in excess of 40 hours in any one week.

59. Cameron and each Pennsylvania Worker are entitled to overtime pay under the PMWA.

60. Defendants had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

61. Cameron and each Pennsylvania Worker seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

62. Cameron and each Pennsylvania Worker also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the PMWA.

## Ohio Acts Violations

63. Cameron incorporates all preceding paragraphs.

64. Cameron brings these claims under the Ohio Acts as a Rule 23 class action.

65. The conduct alleged herein violates the Ohio Acts.

66. The Day Rate Workers who worked overtime for Defendants in Ohio are the Ohio Workers.

67. At all relevant times, Defendants were subject to the requirements of the Ohio Acts.

68. At all relevant times, Defendants employed Cameron and the Ohio Workers as "employees" within the meaning of the Ohio Acts.

69. The OMFWSA requires that employees receive overtime compensation at not less than 1.5 times the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

70. As employees of Defendants, Cameron and the Ohio Workers worked in excess of the maximum weekly hours permitted under O.R.C. §4111.03 but were not paid overtime wages for this time spent working.

71. Cameron and the Ohio Workers seek back wages, attorney fees, and costs from Defendants for violating the OMFWSA.

72. The OPPA requires that Defendants pay Cameron and the Ohio Workers all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the 15th day thereof, and on or before the 15th day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

73. During all material times, Cameron and the Ohio Workers were not paid wages, either their regular rates, a minimum wage, or overtime wages at 1.5 times their regular rates within 30 days of performing the work. *See* O.R.C. §4113.15(B).

74. Cameron's and the Ohio Workers' unpaid wages remain unpaid for more than than 30 days beyond their regularly scheduled payday.

75. In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

76. Cameron incorporates all preceding paragraphs.

77. Numerous employees have been denied overtime by Defendants' day rate pay plan which is in willful violation of the FLSA, the PMWA, and the Ohio Acts.

78. Numerous other individuals who worked with Cameron indicated they were paid in the same manner, performed similar work, and were not paid overtime as required by state and federal law.

79. From his observations and experience working for Defendants, Cameron is aware Defendants' illegal practices or policies have been imposed on other Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers.

80. The Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers all regularly worked in excess of 40 hours per week and received only their flat daily rates for all hours worked.

81. These employees are similarly situated to Cameron in terms of *relevant* job duties, pay provisions, and employment practices.

82. Defendants' failure to pay overtime as required by the FLSA, the PMWA, and the Ohio Acts results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Day Rate Workers, the Pennsylvania Workers, or the Ohio Workers.

83. Thus, Cameron's experiences are typical of the experiences of the Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers.

84. The specific job titles or precise job locations of the various Day Rate Workers do not prevent collective or class treatment.

85. All Day Rate Workers, regardless of their precise job requirements or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

86. Cameron has no interests contrary to, or in conflict with, the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers.

87. Like each Day Rate Worker, Pennsylvania Worker, and Ohio Worker, Cameron has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

88. This class/collective action is superior to individual claims as a means for fair and efficient adjudication of the claims.

89. Absent this action, many Day Rate Workers, Pennsylvania Workers and Ohio Workers likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA and applicable state labor laws.

90. Furthermore, even if some of the Day Rate Workers, Pennsylvania Workers, and Ohio Workers could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

91. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

92. The questions of law and fact common to the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers predominate over any questions affecting solely the individual members.

93. Among the common questions of law and fact are:

(a). Whether Defendants employed the Day Rate Workers within the meaning of the applicable state and federal statutes, including the FLSA, the PMWA and the Ohio Acts;

(b). Whether Defendants' day rate pay plan complies with the FLSA, the PMWA, and the Ohio Acts;

(c). Whether Defendants' decision to not pay time and a half for overtime to the Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers was made in good faith;

(d). Whether Defendants' decision to not pay time and a half for overtime to the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers was willful; and

(e). Whether Defendants' pay practices were applied uniformly across the nation to all Day Rate Workers, Pennsylvania Workers and Ohio Workers, respectively.

94. Cameron's claims are typical of the claims of the Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers.

95. Cameron and the Day Rate Workers, the Pennsylvania Workers, and the Ohio Workers sustained damages arising out of Defendants' illegal and uniform employment pay practices.

96. Cameron knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

97. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

98. Therefore, this issue does not preclude collective and class action treatment.

99. Cameron retained counsel competent and experienced in complex wage-and-hour class action litigation.

100. Numerous courts have appointed Plaintiff's counsel to litigate class actions on behalf of employees asserting overtime misclassification and other wage-and-hour claims under state and federal wage laws.

101. Plaintiff's counsel will commit the necessary resources to prosecute this action vigorously for the benefit of all class members.

## JURY DEMAND

102. Cameron demands a trial by jury.

**RELIEF SOUGHT**

103. Wherefore, Cameron prays for:

    (a) an order allowing Cameron's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Workers;

    (b) an order allowing Cameron's PMWA claims and Ohio Act claims to proceed as class actions on behalf of the other Pennsylvania Workers and Ohio Workers, respectively;

    (c) judgment finding Defendants in violation of the FLSA, the PMWA and the Ohio Acts;

    (d) judgment finding Defendants liable for to Cameron and the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers for unpaid overtime, an equal amount of liquidated damages and all applicable penalty wages;

    (e) judgment awarding Cameron and the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers reasonable attorney's fees and costs of this action;

    (f) judgment awarding Cameron and the Day Rate Workers, the Pennsylvania Workers and the Ohio Workers pre- and post-judgment interest at the highest rates allowed by law; and

    (g) such other and further relief as may be necessary and appropriate.


Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: ___/s/ Richard J. (Rex) Burch___

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Fed. I.D. 21615
**Michael K. Burke**
Texas Bar No. 24012359
Fed. I.D. 24356
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
mburke@brucknerburch.com

       **Michael A. Josephson**
       Texas Bar No. 24014780
       Fed. I.D. 27157
       **Taylor A. Jones**
       Texas Bar No. 24107823
       Fed. I.D. 3348814
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
tjones@mybackwages.com


       **ATTORNEYS IN CHARGE FOR PLAINTIFF**

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Mark Cameron

1. I hereby consent to make a claim against <u>Pinpoint Pipeline/Buckeye Partners</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against <u>Pinpoint Pipeline/Buckeye Partners</u>.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Mark Cameron*                Date Signed: Oct 22, 2019